UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWIN BETANCO VAZQUEZ,<br><br>Petitioner,<br><br>v.<br><br>Ruben LEYVA, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; Kenneth PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, acting U.S. Attorney General; Mike HOLLINSHEAD, Sheriff of Elmore County,<br><br>Respondents. | Case No.  1:26-cv-00424-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner

Edwin Betanco Vazquez ("Betanco"). For the reasons described below, the Court

will grant the Petition and order Respondents to immediately release Betanco.

## BACKGROUND

Betanco is a native and citizen of Honduras. He alleges that he fled

Honduras after an association of farmers attacked his family and his home and later

ORDER - 1

fled Mexico after the Cartel de Jalisco Nueva Generacion kidnapped and threatened him for refusing to work with the cartel while he was employed as a police officer. Betanco has allegedly resided in the United States since April 2016. *Petition* ¶ 1, Dkt. 1. On December 7, 2022, Betanco filed an affirmative asylum application with U.S. Citizenship and Immigration Services (USCIS). He was awaiting his asylum interview when he was detained on July 7, 2026, and he was issued a Notice to Appear while in custody.

Betanco is the sole provider for his wife and two young U.S.-citizen children. The oldest is three years old; the youngest is four months old. His wife is a homemaker who provides full-time care for the children. The children rely on Betanco for emotional and financial support. *Petition* ¶ 3, Dkt. 1.

Betanco's criminal history includes two misdemeanor DUI convictions. The first conviction was in 2020, and he received a 90-day jail sentence. The second was in 2023, and he received a one-year sentence for that offense. *See Callahan Dec.* ¶¶ 7, 10. Dkt. 6-1. In March 2025, Betanco was convicted of a probation violation,[1] and he was sentenced to four days in jail. Betanco's wife says he violated parole by "driving without a valid license to take a family member of one of his employees who passed away to go buy a coffin." *Cortez Dec.* ¶ 9.

In addition to these offenses, Betanco has a handful of other driving-related

---

[1] He was on probation as a result of the 2023 DUI conviction.

ORDER - 2

offenses, including speeding, operating a vehicle without privileges or without a license, and fictitious display of a plate or registration. *See Callahan Dec.* ¶¶ 6, 8, 12, 13, Dkt. 6-1.

Betanco points out that Respondents did not detain him after he was released from criminal custody—or even shortly thereafter. Respondents say the reason for this was because they had to spend considerable effort to locate Betanco. They assert that he "appears to have actively attempted to avoid being found." *Response,* Dkt. 6, at 3. As support, Respondents point out that "Petitioner listed different addresses on various applications and registered vehicles to numerous addresses across Idaho." *Id.*

Betanco disputes any suggestion that he was attempting to evade authorities. He says some vehicles were registered to his business address, others to his residence, and that one record may have reflected an outdated home address. In his view, those discrepancies have innocent explanations and do not show that he was attempting to conceal his whereabouts. And as far as the DUIs are concerned, he says Respondents failed to consider evidence of rehabilitation—including that he has not had a drink in three years and that he has not had any alcohol-related offenses for four years.

Betanco is currently detained at Weiser County Jail in Washington County, Idaho. *See Callahan Dec.* ¶ 3, Dkt. 6-1. He contends his detention is unlawful

ORDER - 3

because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) have determined that he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A). Id. ¶¶ 6–10. Betanco has also filed a Motion for Temporary Restraining Order (Dkt. 2).

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Throughout our nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.*

## ANALYSIS

The statutory question at the heart of this Petition is a familiar one—this Court has answered it dozens of times in recent months. Each of those cases traces to the same source: a change in position by DHS and EOIR on the reach of 8 U.S.C. § 1225, which requires that a limited class of noncitizens be detained without any opportunity for a bond hearing. *See Moctezuma Macias v. Henkey*, No. 1:25-cv-00741, 2026 WL 221450, at *1-2 (D. Idaho Jan. 27, 2026); *see also, e.g.*, *Cordero Esparza v. Knight*, 1:25-cv-00601-BLW, 2025 WL 3228282 (D. Idaho Nov. 19, 2025). A full reexamination of that question is unnecessary here.

As the Court has previously explained, noncitizens facing immigration

ORDER - 4

detention have historically been held under one of two statutes. Those "seeking admission into the country"—that is, noncitizens apprehended at or near the border—were detained under § 1225, which affords no bond hearing. Noncitizens already living in the United States were instead detained under 8 U.S.C. § 1226, which makes detention discretionary and provides a bond hearing, so that a detainee who poses neither a danger to the community nor a risk of flight may be released. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). The two statutes preserved a distinction the law has long drawn between noncitizens residing in this country and those who have not yet entered it. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

That distinction held until last summer. On July 8, 2025, ICE issued its "Interim Guidance Regarding Detention Authority for Applicants for Admission," which treats every noncitizen who entered without inspection as subject to mandatory detention under § 1225(b)(2)(A)—regardless of when they were apprehended or how long they have lived in the United States. The Board of Immigration Appeals adopted the same position on September 5, 2025, holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that immigration judges lack authority to conduct bond hearings for noncitizens who entered without admission because they are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). District courts across the country have since

ORDER - 5

rejected that interpretation as contrary to both the Immigration and Nationality Act and the due process rights of those detained. *See Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *10 (W.D.N.Y. Nov. 4, 2025); *Guerrero Orellana v. Moniz*, No. 25-cv-12664, 2025 WL 2809996 (D. Mass. Oct. 3, 2025).

This Court has done the same. Confronted with a steady run of substantially identical petitions, it has rejected Respondents' reading of § 1225 each time, setting out its reasoning at length in decisions such as *Quijada Cordoba v. Knight*, 1:25-cv-00605, 2025 WL 3228945 (D. Idaho Nov. 19, 2025). Respondents present no argument here that those decisions did not already address, so the Court will not retread that ground. For the reasons given in its earlier decisions, the Court concludes that Petitioner's mandatory detention under § 1225 is unlawful. *See Moctezuma Macias*, 2026 WL 221450, at *1. That leaves only the question of remedy.

In resolving a habeas petition, a district court has equitable discretion to dispose of the matter "as law and justice require." *See Brown v. Davenport*, 596 U.S. 118, 127-28 (2022). But that discretion has limits. Relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court," and it "must be narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up).

ORDER - 6

For their part, Respondents ask that if the Court concludes § 1226(a) applies, the matter be remanded to ICE for the custody determination that statute and its implementing regulations contemplate. In some cases, a bond hearing or similar administrative process may be enough to cure an unlawful detention. *See E.C. v. Noem*, No. 2:25-cv-01789, 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 45-46 (1st Cir. 2021).

This is not one of those cases—although it presents a closer call than many of the Court's recent habeas cases because Betanco has a criminal history. Still, though, the Court concludes that Respondents' concerns do not warrant continued detention after the Court determined that mandatory detention under § 1225 was unlawful. Betanco's most serious offense (the second misdemeanor DUI) was based on conduct occurring approximately four years ago. Plus, Betanco has submitted evidence demonstrating substantial ties to the community, including his role as the sole financial provider for his wife and two young children. As noted above, Respondents contend that Betanco was difficult to locate, but Betanco has offered innocent explanations. Considering this record as a whole, the Court concludes that this is not a case where continued detention pending a later custody determination is appropriate.

Finally, the remedy must account for Respondents' refusal to abandon their policy. A habeas order binds only the petitioner before the Court, so unless and

ORDER - 7

until the Ninth Circuit issues a binding decision, Respondents will presumably keep applying their interpretation of § 1225—and detainees will keep filing nearly identical petitions, waiting in jail while each one is decided. That wait is itself a substantial deprivation of liberty, and substituting a bond hearing for release would only lengthen it. The Court cannot justify that result for this petitioner.

ORDER

**THEREFORE, IT IS HEREBY ORDERED** that:

1. The Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**. Respondents are ordered to immediately release Petitioner.

2. Petitioner's Motion for a Temporary Restraining Order (Dkt. 2) is **DENIED AS MOOT**.

3. Petitioner's Motion to Seal (Dkt. 11) is **GRANTED.**



DATED: July 28, 2026

B. Lynn Winmill
U.S. District Court Judge

ORDER - 8